In re Lesta J. BROWN, Plaintiff-Respondent,

v.

Ben BROWN, Defendant-Appellant.

No. 33253.

St. Louis Court of Appeals.

Missouri.

July 15, 1969.

———◆———

Harold E. Scheppner, Jr., St. Louis, for appellant.

**WEIER, Commissioner.**

This is an appeal from a decree of annulment of a marriage in which the court also placed custody of the minor child of the parties in plaintiff.

Plaintiff, Lesta J. Brown, filed suit for divorce against the defendant, Ben Brown, on April 7, 1967. Plaintiff alleged, as grounds for the divorce, general indignities. She requested the care and custody of their minor child, Sandra Jean, support for the child, alimony, attorney's fees and court costs. At the time of the marriage and during the course of the proceedings in this case, Brown was in the Missouri State Penitentiary under sentence from St. Louis County for a term of years. Upon personal service of the divorce petition, the defendant prepared and filed pro se a pleading which he entitled "Defendant's Pleading to Petition for Divorce." In this, he attacked the grounds for divorce and plaintiff's right to a divorce decree. He also contested the prayer for custody of the minor child, alleging that plaintiff, by reason of her conduct, was unfit to have custody. An alternate plan of placing the child with a third party was proposed. In addition the defendant set forth that after his marriage to plaintiff, he had caused to be delivered to plaintiff $28,000.00 in currency; that she intended to deprive him of this sum; and that he would at time of trial produce witnesses to support his statements. He then went on to request the dismissal of the petition, but if the court did not take this action, to issue a writ of habeas corpus ad testificandum so that he might be present at the trial to offer his testimony, produce his witnesses and conduct his defense. He concluded by pointing out that he was without counsel and unable, because of indigency, to employ one. He also called the attention of the court to the fact that he was untutored and unskilled in matters of law and requested that his pleadings be accepted wtih leniency notwithstanding the form and phraseology used.

The court's records showed no action taken on this case up to the time an amended petition was filed on May 23, 1967. On this date summons was again issued to the defendant who was again personally served. In this amended petition plaintiff related her marriage to defendant while he was serving a term in the penitentiary. Stating that such a marriage was null and void, she asked for a decree of annulment.[1] Ben Brown then forwarded a motion for security for costs and a pleading entitled: "Joint Motion of Objection to Insufficiency to Process or Service of Process and for Return to Status Quo and Application for Disqualification". In this, Brown complains of the action of the court in placing the case on the default docket because he had filed a motion for security for costs which had not been ruled on. He points out that he intends no default as is seen by his response to the original petition and that he wants to pursue his defense. He further refers to plaintiff withholding a large sum of money from him with intent to deprive him of it. The next portion of the pleading sets out that the judge is prejudiced by reason of his action in setting the case for default hearing and requests assignment of a new judge to hear the case. Grounds for dismissal of the original petition for divorce and the amended petition are then set out with a motion that they be dismissed.

---

1. For an annulment case against a convict, see Jandro v. Jandro, Mo.App., 246 S.W. 609.

The last described motion was filed July 11, 1967, and the court, finding it had erred in not filing the motion to secure costs, ordered it filed and sustained. "Default and Inquiry" granted on June 30, 1967 was set aside. The motion for objection to insufficiency of process or service of process and return to status quo was overruled and the application for disqualification sustained.[2] The case was ordered transferred to another division of the court. A court minute record indicates that on September 28, 1967, "default and inquiry" was again granted. The case was at that time set for trial October 24, 1967.

Court minutes are silent about the filing of any additional defense pleadings until October 24, 1967, at which time it is shown that "Motion for Leave to Submit Supplemental Pleading and for Addition of Party for Purpose of Awarding Custody and for Pre-Trial Hearing or Alternate Summary Judgment" was filed. In this the defendant complains of the conduct of the plaintiff and asks the court to place custody of his daughter in his sister, Joycie E. Samuelson. Again he asks that the petition be dismissed, that custody of the child be awarded defendant, that plaintiff be ordered to return the $28,000.00 entrusted to her, for separate maintenance and costs. Without acting on this or any prior defense pleading, the court heard the case as a default matter.[3] It was taken under advisement and on October 26, 1967 a decree of annulment was granted plaintiff with custody of the minor child, Sandra Jean.

On November 22, 1967, there was received in the Circuit Clerk's Office another pleading entitled: "Motion of Objection". This motion, verified, as were all the other pleadings of defendant, related that on October 10, 1967, he had filed a motion with the court charging plaintiff with certain offenses and requesting leave to file a supplemental pleading. He said he had directed an inquiry to the judge of the court on November 7, 1967, but as of November 20, 1967, he had not been notified by the court of any action taken on the pleadings. He further requested that the court order the clerk to notify him with respect to such matters.

Nothing in the record shows that Ben Brown received any notice of the entry of the decree of annulment and order as to custody of the child following its entry on October 26, 1967.

On January 23, 1968, defendant filed a motion for summary judgment contending again that the plaintiff was not entitled to relief, that he should be awarded custody of the child, with care and control in his sister, that plaintiff return the $28,000.00 to him and other relief.

Finally, the court on March 1, 1968, advised Brown of the entering of the decree of annulment and custody of his child in October of 1967. Then on April 17, 1968, a motion for a special order to appeal out of time was sustained by this court under Civil Rule 82.07, V.A.M.R.

Brown was also authorized on his motion to proceed as a poor person. He quickly filed his notice of appeal within the ten days granted by the order. Thereafter the circuit court appointed an attorney to represent the defendant, but the attorney for plaintiff withdrew and she now finds herself without counsel.

■ This Court has jurisdiction on the appeal. Although Brown had raised in his pleadings a counterclaim for $28,000.00

---

2. This order was contrary to Civil Rule 55.32 V.A.M.R. which reads in part: "In case the application is granted for objection to the judge, the court shall not decide any other matters raised at the same time, but these shall be determined by the judge assigned or called in to try the case."

3. As to default judgments see J. G. Jackson Associates v. Mosley, Mo.App., 308 S.W.2d 774, 777; State ex rel. Jones v. Reagan, Mo.App., 382 S.W.2d 426, 430.

which exceeds the jurisdiction of the Court of Appeals (Art. V, Sec. 3, Mo.Const. of 1945, V.A.M.S.; Sec. 477.040, RSMo 1959, V.A.M.S.) this claim was not acted upon by the trial court and it is still pending below. The judgment appealed was that entered October 26, 1967, annulling the marriage and placing custody of the minor child in plaintiff. This was a separate and independent claim arising out of a purported contract of marriage and not related to the claim for the $28,000.00. It was therefore a final judgment from which an appeal could be taken. (Civil Rule 82.06, V. A.M.R.; Lynch v. Webb City School District No. 92, Mo.App., 373 S.W.2d 193, 196; Elliott v. Harris, Mo., 423 S.W.2d 831, 832.)

In determining our jurisdiction on appeal, we are governed by the rule set forth by the Supreme Court in State ex rel. Lingenfelder v. Lewis, 96 Mo. 146, 8 S.W. 770, where it was said: "The amount in dispute by which the jurisdiction of the appellate court is to be determined is not necessarily fixed by the amount of the judgment appealed from, (State ex rel. Heye v. St. Louis Court of Appeals, 87 Mo. 569,) nor by the amount claimed on the cause of action sued upon, (Kerr v. Simmons, 82 Mo. 269,) but by the amount that remains in dispute between the parties on the appeal, * * *." Since the counterclaim is not before us, and since this is a court of general jurisdiction, the appeal is properly brought here. (Baer v. Baer, 364 Mo. 1214, 274 S.W.2d 298, 300.)

With our right to proceed settled, we now deal with the principal issue presented. Is defendant entitled to have the judgment below set aside for failure of the clerk to give proper notice under Civil Rule 74.78? We believe that he is.

Civil Rule 74.78, V.A.M.R., reads:

"Notice of Entry of Orders and Judgments—Upon the entry of an order or judgment, the clerk shall serve a notice of the entry by mail in the manner provided in Rule 43.01 upon every party affected thereby who is not in default for failure to appear and who was not present in court in person or by attorney at the time of the entry of such order of judgment. If such notice is not given, said order or judgment shall be set aside for good cause shown upon written motion filed within 6 months from the entry of the order or judgment."

Ben Brown was qualified under the terms of this rule as one to whom notice should be given. He was not in default for failure to appear, since he was restrained of his freedom of movement by a sentence to prison. He had tried to plead and did plead his defenses and his affirmative claims at frequent intervals and to the best of his ability. The court had knowledge that he was interested in the suit and knew that without a writ of habeas corpus ad testificandum, he could not be present in court to give his testimony or hear the judgment of the court. He was without counsel. Yet the court, knowing these facts and knowing defendant's address, failed to require the clerk to mail a notice of the order of judgment to him after it was rendered.

It is true that a convict's civil rights are suspended where he is sentenced to prison for a term less than life. (Section 222.010, RSMo 1959, V.A.M.S.) And at common law he could be sued but could not sue. (Fidelity & Deposit Company of Maryland v. Boundy, 236 Mo.App. 656, 158 S.W.2d 243.) But our courts are zealous in protecting the civil rights of convicts. As Judge Goode stated in Gray v. Gray, 104 Mo.App. 520, 79 S.W. 504, 505: "Courts should carefully protect the rights and interest of a disabled defendant in a proceeding like this, and it would not be improper to appoint some attorney to look after the case as the friend of the court if no defense is made; especially if property interests are involved." This was a suit for divorce in which the court held that such an action could be filed and a decree of divorce obtained against the convict while he was serving his sentence in the pen-

itentiary. In McLaughlin v. McLaughlin, 228 Mo. 635, 129 S.W. 21, a convicted murderer was sentenced to ten years in prison. While there, his wife sued him for divorce and as a part of the decree she was vested with title to his real estate. Holding this portion of the decree void, the court found that the statutes establishing a procedure to appoint a trustee for convicts were passed to end the situation created by the common law rule where a convict might be sued but had no adequate means to defend. Since the enactment of the statutes, a defense could be properly made through a trustee appointed by the court. These statutes are now Secs. 460.-010 et seq., RSMo 1959, V.A.M.S. Commenting on this legislative enactment the court in Murphy v. Barron, 275 Mo. 282, 205 S.W. 49, said that a court should not allow the looting of a convict's estate while he was in prison. The legislature had recognized such a duty by providing a method by which the estate might be preserved. To defend, the court should appoint a trustee.

 If a convict can be sued, then, as a party litigant, he is entitled to the protection of the rules of court afforded litigants. And where he is not in court, is not represented by counsel and a trustee has not been appointed by the court, the notice of an order of judgment in the case should be mailed to him as required by Civil Rule 74.78. Because of this error the judgment below must be set aside and the case remanded.

 Defendant is now represented by counsel. The evidence presented on behalf of plaintiff occupied a space of less than three pages in the transcript. Nothing was brought out with respect to how the best interests of the child, Sandra Jean, might be served in placing her in the custody of her mother. Certainly the welfare of the child is the primary and paramount consideration in a custody proceeding. (In re Neusche, Mo.App., 398 S.W.2d 453, 457; Sec. 452.120, RSMo 1959, V.A.M.S.). Again with regard to the alleged marriage, no facts were adduced to show how the parties obtained a license to marry or who performed the ceremony. Where plaintiff seeks to annul a marriage that took place under such unusual circumstances, any decree of the court must be based upon facts more substantial than mere speculation or guesswork. (Brotherton v. City of Jackson, Mo.App., 385 S.W.2d 836, 841). These matters and the question of whether a trustee should be appointed by the court to protect the property interests of the convict-defendant, may well be considered by court and counsel at and before re-trial. By the time of trial, motions and pleadings, which were filed or lodged with the clerk by the defendant pro se, can be acted upon and the issues framed by these or other pleadings, which may be filed in the case.

We reverse the judgment below and remand for a new trial.

PER CURIAM:

The foregoing opinion by WEIER, C., is adopted as the opinion of this Court. Accordingly, judgment is reversed and the cause remanded for a new trial.

WOLFE, P. J., and BRADY and DOWD, JJ., concur.