STATE of Missouri, Respondent,

v.

Ishman BENTON, Appellant.

No. WD 43311.

Missouri Court of Appeals,
Western District.

May 14, 1991.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 27, 1991.

Application to Transfer Denied
Sept. 10, 1991.

David Samuel Durbin, Appellate Public Defender, Kansas City, for appellant.

William L. Webster, Atty. Gen., Andrea K. Spillars, Asst. Atty. Gen., Jefferson City, for respondent.

Before LOWENSTEIN, TURNAGE and FENNER, JJ.

LOWENSTEIN, Judge.

The defendant Ishman Benton was convicted by a jury of the crime of assault in the first degree, § 565.050, RSMo 1986, and armed criminal action, § 571.015 RSMo 1986. He was sentenced to twelve years imprisonment for assault and three years imprisonment for armed criminal action, with the sentences running concurrently.

On appeal Ishman contends he is entitled to a new trial because (1) the corpus delicti of first degree assault was not proved independently of his extrajudicial statement, (2) the failure of any eyewitness or the victim to testify violated his right of confrontation, (3) the state prejudiced Ishman by arguing in closing that the victim did not testify because she was afraid of him, and (4) a police officer's testimony that the victim said that she had an ex parte order against Ishman amounted to hearsay and was irrelevant, inflammatory, prejudicial and in contravention of the Sixth, Eighth and Fourteenth amendments to the U.S. Constitution.

The victim, Tracey Benton, was married to the defendant but had separated from him about a week prior to the assault. Ishman Benton did not testify at trial. His extrajudicial statement was admitted over objection to its voluntariness. In his statement, the defendant alleged the incident happened as follows:

Tracey and Ishman planned to meet on July 9, 1990, so Ishman could give Tracey his set of house keys in exchange for kitchen wares to use in his kitchenette at the Four Acre Motel. They met at Tracey's work place. On the way to the motel, they argued angrily about Tracey's inability to pay her bills and the garnishment of her wages. They parked outside of the Four Acres Motel.

Tracey suddenly changed her attitude, grabbed her blouse, ripped it open and asked Ishman if he wanted to have sex with her. She then leaned forward as if to kiss him. Ishman saw a box cutter in her hand. Tracey stabbed Ishman in the left hand. They fought, spilling out of the car onto the ground. Ishman gained control of the box cutter and cut Tracey on the face or cheek and her arm. Tracey got up and said "I got you" and walked around to the front of the motel. Ishman went to his motel room.

Kansas City Police Officer James Eddins, responding to a call, picked up Tracey at a nearby restaurant. The lacerations on her face, neck, arms and legs bled profusely. She was hysterical. Paramedics treated her at the scene and took her to a hospital.

Officer Eddins then went to the Four Acres Motel. He found no eyewitnesses nor any weapon. Fingerprints lifted from Tracey's car matched Ishman's. Although Tracey's wounds were not life threatening, they were deep according to the treating physician and had to be sutured one layer at a time. The ulnar nerve of her right hand was also severed. She will have extensive scarring. Benton received a slight cut on one hand.

This case is unusual because the surviving victim failed to testify at trial. Needless to say this came as a surprise to the prosecutor. The state did not subpoena Tracey because she had been a very cooperative witness. The state orally moved to admit Tracey's testimony from the preliminary hearing in lieu of her live testimony,

but later withdrew it. She did not appear until after the state concluded its case-in-chief. Out of the jury's hearing, Tracey said she did not appear on time to testify because she was afraid of Ishman's revenge. The state requested leave to re-open its case-in-chief so that Tracey could take the stand. The court refused.

Although Tracey did not testify at trial, the prosecutor had reason to believe she would. The jury heard the following in the prosecutor's opening remarks:

> When Tracey left work July 9, 1990, she got into her car. As she did this, Ishman entered through the passenger door and told her to take him to the Four Acres Motel. She was reluctant, but felt she did not have a choice because she thought she saw something in his hand. When they arrived, Ishman asked when he could return home to Tracey. Tracey responded that she did not think he could because of the problems between Ishman and her children from a previous marriage. He responded, "They won't have a mother," and "I'm going to kill you, bitch." Then Ishman attacked her with the box cutter.

These remarks were not supported by evidence because Tracey did not testify.

The state asked that the jury find Ishman guilty of first degree assault. In its opening statement, the defense asked the jury to find Ishman guilty only of second degree assault. In closing, however, the defense argued that evidence existed to support only the crime of third degree assault. The defense theory presented to the jury was Benton was provoked by the prior attack of his estranged wife. These pertinent provisions of those crimes are set out below:

### First Degree Assaults—§ 565.050 RSMo 1986

A person commits the crime of assault in the first degree if he attempts to kill or knowingly causes or attempts to cause serious physical injury to another person.

### Second Degree Assault— § 565.060 RSMo 1986

1. A person commits the crime of assault in the second degree if he:

(1) Attempts to kill or knowingly causes or attempts to cause serious physical injury to another person under the influence of sudden passion arising out of adequate cause; or

(2) Attempts to cause or knowingly causes physical injury to another person by means of a deadly weapon or dangerous instrument; or

(3) Recklessly causes serious physical injury to another person; or

   *     *     *     *     *     *

2. The defendant shall have the burden of injecting the issue of influence of sudden passion arising from adequate cause under subdivision (1) of subsection 1 of this section.

### Third Degree Assault—§ 565.070 RSMo 1986

1. A person commits the crime of assault in the third degree if:

(1) He attempts to cause or recklessly causes physical injury to another person; or

(2) With criminal negligence he causes physical injury to another person by means of a deadly weapon; or

(3) He purposely places another person in apprehension of immediate physical injury; or

(4) He recklessly engages in conduct which creates a grave risk of death or serious physical injury to another person; or

(5) He knowingly causes physical contact with another person knowing the other person will regard the contact as offensive or provocative.

The jury convicted Ishman of first degree assault and armed criminal action.

The first point states the trial court erred in failing to sustain the defendant's motion for judgment of acquittal at the close of the state's evidence because the state did not prove the corpus delicti of first degree assault in that the state failed to provide

independent corroboration necessary to render Ishman's confession admissible, and that without independent testimony of Tracey or any eyewitness no proof existed that a crime occurred. Ishman adds that the jury's decision was an arbitrary violation of the right of confrontation as contained in the Sixth Amendment to the U.S. Constitution and Article I § 18(a) of the Missouri Constitution.

■■■ The general rule of law is that an accused's extrajudicial admissions, statements or confessions are not admissible *unless* there is independent proof, circumstantial or direct, of the corpus delicti's essential elements. *Kansas City v. Verstraete,* 481 S.W.2d 615, 617 (Mo.App.1972); *State v. Arnot,* 724 S.W.2d 676, 679 (Mo. App.1987); *State v. Friesen,* 725 S.W.2d 638, 639 (Mo.App.1987). The corpus delicti consists of two elements: "(1) proof, direct or circumstantial, that the specific loss or injury occurred, and (2) someone's criminality as the cause of the loss or injury." *State v. Friesen,* 725 S.W.2d at 639, citations omitted. The state bears the burden of proving the corpus delicti by legal evidence sufficient to show that someone has committed the crime charged. *Id.* As a corollary to the corpus delicti rule, if the accused's extrajudicial statement enables the state to discover corroborating evidence of the particular crime confessed, the corroborating evidence need not be totally independent of the extrajudicial statement to establish complete proof that the crime has been committed. *Hooker v. State,* 775 S.W.2d 303, 306 (Mo.App.1989).

■■ The attending physician testified about Tracey's wounds, which is the first element of the corpus delicti. The critical question now is whether the state properly established that someone caused Tracey's injuries. Ishman argues that without an eyewitness' or Tracey's testimony there is no corroborating evidence to render his extrajudicial statement admissible.

The state responds that eyewitness or victim testimony is not required to prove the corpus delicti because other corroborative evidence exists, such as: (1) the attending physician's testimony that Tracey suffered cuts on her cheeks, arm, neck and legs; (2) the investigating officer's testimony that Tracey's car was parked outside of the Four Acre Motel; (3) the Crime Lab detective's testimony that there was apparent blood all over the vehicle's front seat, doors and steering wheel; (4) the certified latent print examiner's statement that latent prints lifted from Tracey's car belonged to Ishman; (5) the forensic chemist's statement that a piece of newspaper taken from Tracey's car was smeared with human blood, and (6) the police detective's testimony that he saw a recent cut on Ishman's left hand.

The state argues these pieces of evidence corroborate Ishman's extrajudicial statements that (1) he and Tracey argued in Tracey's car while parked outside the Four Acre Motel; (2) that he cut Tracey's face or cheek and her arm. Considering the state's evidence along with Ishman's statement, this court holds that the state has proved the corpus delicti of first degree assault.

■■ The defense also argues Ishman's conviction without eyewitness or victim testimony violated the Sixth Amendment to the U.S. Constitution and Article I, § 18(a) of the Missouri Constitution. No cases are cited in support of this argument. Article I, § 18(a) of the Missouri Constitution provides that a defendant has a right to "meet the witnesses against him face to face." A defendant has no right, however, to confront a witness who does not give evidence at trial. *State v. Rife,* 619 S.W.2d 900, 903 (Mo.App.1981). Ishman was not entitled to confront or cross-examine an eyewitness or Tracey because neither testified at trial. This point is denied.

For his next point on appeal, Benton argues the trial court erred in overruling his motion for mistrial because the prosecutor had improperly argued in closing that Tracey did not testify because she feared Ishman, because the court's subsequent curative instruction was inadequate.

■■ The trial court has broad discretion in controlling the scope of counsel's closing arguments. *State v. Hampton,*

653 S.W.2d 191, 193 (Mo. banc 1983). This court will not reverse the trial court's ruling on the propriety of counsel's argument unless there has been a clear abuse of discretion. Id. Furthermore, this court will reverse Benton's conviction because of improper argument only if the complained of comments decisively affected the jury's determination or where the argument was plainly unwarranted. *State v. Murphy*, 739 S.W.2d 565, 570 (Mo.App.1987). (Citations omitted.)

In closing, defense counsel argued that the state had not proved the elements of first degree assault because Tracey did not testify at trial. Defense counsel speculated that the state did not call Tracey as a witness because she was not credible. In rebuttal, the state said that Tracey did not testify because she was afraid of Ishman. The defense objected and was sustained.

On appeal, the state argues its remark was invited by the state because the defense knew that Tracey stated, out of the jury's hearing, that she was afraid of Ishman. This court finds, however, that defense counsel's closing argument was proper and did not invite the state's retaliatory remarks. In opening, the state recounted Tracey's version of how the assault happened. Because Tracey never testified, defense was allowed to argue that the state failed to produce the proof it promised in opening remarks.

This court holds that, though the prosecutor's remark was improper, it did not prejudice Ishman because there was strong evidence to convict him. *State v. Degraffenreid*, 477 S.W.2d 57, 65 (Mo. banc 1972). His extrajudicial statement, in which he stated he intentionally and repeatedly cut Tracey, was properly admitted into evidence. This alone was sufficient to supply the intent requirement of first degree assault. The second point on appeal is denied.

For his final point Benton argues the trial court erred in overruling his motion for mistrial made because a police officer testified that Tracey said she had an ex parte order against Ishman, and that the testimony was hearsay, irrelevant, and inflammatory.

Declaring a mistrial is a drastic remedy that should be granted only where there are extraordinary circumstances and where it is the only way to remove prejudice to the defendant. *State v. Schneider*, 736 S.W.2d 392, 400 (Mo. banc 1987). As stated above, Ishman's properly admitted extrajudicial statement, along with the attending physician's testimony about Tracey's wounds, constituted sufficient evidence to convict Ishman of first degree assault. Thus, this improperly admitted hearsay remark did not prejudice Ishman. *State v. Degraffenreid*, 477 S.W.2d at 65. Appellant's third point is denied.

Although not raised on appeal, this court elects to consider, under Rule 30.20, whether the state's opening was improper because it contained Tracey's depiction of how the assault occurred which was never later supported by evidence. An opening statement is improper if the prosecutor *knows* the only witness who might furnish the evidence is unavailable. *State v. Boyd*, 600 S.W.2d 97, 99 (Mo.App.1980). The standard is good faith. Id.

Although the state did not subpoena Tracey, it did not have reason to believe she would fail to attend trial. There is no evidence that the state encouraged her to stay away. There is substantial evidence, however, that the state went to great lengths to produce her at trial. The defense had plenty of opportunity in its closing argument to show that the state did not produce the evidence it promised in opening. There was neither error nor prejudice in the state's opening remarks. See, *State v. Degraffenreid*, 477 at 65.

The judgment is affirmed.